# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1217V
UNPUBLISHED

| | |
|---|---|
| LARRY BULMAN,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: August 12, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Claudia Barnes Gangi*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On August 15, 2019, Larry Bulman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 25, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find Petitioner's SIRVA Table claim must be dismissed, for failure to establish onset within the 48 hours following the administration of vaccination as required to establish a Table injury.

## I.     Relevant Procedural History

After an initial status conference, Petitioner was ordered to file any additional vaccination administration records and an amended statement of completion. ECF 9. Petitioner di so, and also forwarded a settlement demand to Respondent on September 11, 2020. ECF 10; ECF 11; ECF 18.

Respondent subsequently filed a status report indicating that he "intends to contest entitlement" and proposing a deadline for his Rule 4(c) report, which he filed on January 15, 2021. ECF 19; ECF 20. In it, Respondent asserted that there is not a preponderance of evidence demonstrating the requisite facts necessary to establish a Table SIRVA injury. ECF 20. Specifically, "[P]etitioner's contemporaneous medical records do not support the onset of left shoulder pain within 48 hours of vaccine administration." *Id*. at 1. Respondent further argued that Petitioner had failed to prove actual causation because he had yet to offer the evidence necessary to meet the Federal Circuit test. *Id*. at 6 (citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)).

After holding a telephonic status conference with the parties to discuss Respondent's objections to entitlement, I provided the parties with the opportunity to file any additional evidence or memoranda relevant to onset. ECF 21. Petitioner filed a memorandum regarding onset and damages on April 12, 2021.[3] ECF 23. Respondent did not submit any additional filings. Therefore, this matter is ripe for adjudication.

## II.    Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii).

---

[3] Petitioner also briefed damages in his Memorandum, although he had been advised in the Scheduling Order dated March 12, 2021, to limit his argument to the issue of onset. ECF 21. Respondent relied on this Order in choosing not to file any additional evidence. *See* Informal Communication dated 4/23/2021. Accordingly, I find Petitioner's briefing of damages premature (although if any further briefing of damages is called for, Petitioner will be given the opportunity to update or supplement any facts or argument made on this subject to date).

### III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

However, the United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may

be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is also obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Finding of Fact

I make the following findings after a complete review of the record, including the filed medical records, affidavits, and Respondent's Rule 4 report:

- Petitioner received a flu vaccination in his left arm on September 25, 2018. Ex 1 at 4-5.

- On December 26, 2018 (three months post-vaccination), Petitioner presented for an appointment with Dr. Prakash Bandari, an internist, with complaints of low back pain. Ex 3 at 98. Petitioner did not report any shoulder pain, and a musculoskeletal examination revealed normal findings. *Id*. at 100. Petitioner was not diagnosed with any shoulder-related condition. *Id*. at 100-01.

- One month later, on January 22, 2019, Petitioner returned to Dr. Bandari. Ex 3 at 93. At that time, he reported "left shoulder pain x 4 months." *Id*. Petitioner further stated (somewhat incorrectly) that "he was given flu shot in October and since then he had pain in shoulder." *Id*. Physical examination (PE) by Dr. Bandari revealed restricted range of motion in the left shoulder, and Petitioner was diagnosed with rotator cuff tendonitis. *Id*. at 95-96.

- An x-ray of Petitioner's left shoulder was performed on January 29, 2019, which showed a 4mm calcification adjacent to the humeral head, consistent with calcific tendinitis. Ex 3 at 684.

- On April 2, 2019, Petitioner presented for a follow-up appointment with Dr. Vikas Desai, his cardiologist.[4] Ex 3 at 7. He did not report shoulder pain at this visit. *Id*.

---

[4] Petitioner has a longstanding history of congestive heart failure/cardiomyopathy and paroxysmal atrial fibrillation. *See, e.g.,* Ex 3 at 7; Ex 5 at 4.

4

- On June 11, 2019, Petitioner returned to Dr. Bandari, and he again reported left shoulder pain. Ex 4 at 10. There is no reference to the onset of Petitioner's pain in the records from this visit. *Id*. at 10-14. PE again revealed restricted range of motion. *Id*. at 12.

- In his affidavit, Petitioner averred that "immediately after receiving the flu shot, there was pain, discomfort and soreness in my left shoulder that was unusual" compared with his experience receiving flu vaccines for the prior eight years. Ex 2 at 2.

- Petitioner further alleged in his affidavit that "[o]ver the next several days, the pain never subsided and in fact, the pain increased to the point where it began to affect all types of movement with [his] shoulder." Ex 2 at 2. He also stated that "[b]y September 27, 2018, [he] had ongoing severe pain in [his] left shoulder that [he] knew could not be normal post vaccine soreness" and that "[i]n the weeks that followed the flu shot, [his] left shoulder pain never improved." *Id*.

- In his affidavit, Petitioner stated that he experienced "sharp and shooting pains into [his] shoulder" when "reaching for objects, pushing doors open, turning the steering wheel, sleeping on [his] left side, cooking, cleaning, and getting dressed." Ex 2 at 2-3.

- In a supplemental affidavit, Petitioner stated that despite the fact that his shoulder pain began immediately after vaccination, he "had a previously scheduled appointment with Dr. Bandari on December 26, 2018," so he "decided to wait until that appointment to mention [his] shoulder pain." Ex 7 at 2.

- Petitioner alleges that the pain, discomfort, and decreased range of motion "persisted and never improved" from September 25, 2018 until December 26, 2018, the date of his visit with Dr. Bandari. Ex 2 at 3. In his affidavit, Petitioner avers that he reported his shoulder pain and other symptoms to Dr. Bandari at this visit, but he was "instructed . . . to make another appointment specifically for [his] left shoulder pain." *Id*.

To explain the absence of shoulder-related complaints in the treatment records from his December 2018 appointment, Petitioner alleges that Dr. Bandari informed him that "he could not examine [Petitioner's] shoulder at that visit due to insurance/billing reasons" because this appointment was solely to discuss his low back pain. Ex 7 at 2. However, Dr. Bandari's notes from this visit include a discussion of other conditions (in addition to back pain), as well as the report from a full physical examination.[5] Ex 3 at 98-100.

---

[5] In fact, the physical examination revealed normal findings with regard to Petitioner's extremities. Ex 3 at 100.

5

Furthermore, Dr. Bandari had been Petitioner's primary care physician for four years, and his treatment notes are quite thorough (always reflecting a range of complaints and instructions for future visits). *See* Ex 3; Ex 4. It is unlikely that Dr. Bandari would not have at least noted the existence of Petitioner's pain – especially since Petitioner now alleges that at this very time he was experiencing "severe" shoulder pain on a daily basis, when he performed simple tasks such as "reaching for objects, pushing doors open, turning the steering wheel, sleeping on [his] left side, cooking, cleaning, and getting dressed," and that this pain was impacting his ability to serve as caregiver for his ill wife. Ex 2 at 2-3. At a minimum, it seems reasonable to assume that if Petitioner had reported a three-month history of severe shoulder pain at the December 2018 visit, Dr. Bandari would have at least indicated that he advised Petitioner to make a separate appointment to address his shoulder.[6]

Petitioner's allegations that he experienced onset of his shoulder pain within 48 hours after vaccination are further undermined by the lack of specificity in the medical records. The notes from Petitioner's visit with Dr. Bandari in January 2019 reflect a complaint of "left shoulder pain x 4 months" that Petitioner had been experiencing "since" receiving a flu shot that fall. While such language certainly supports a finding that Petitioner suffered left-sided shoulder pain *some time* after his receipt of the flu vaccine, it does *not* support a finding that he more likely than not suffered onset of his condition within 48 hours of vaccination. The June 2019 record similarly says nothing about onset.

Treatment gaps are a further issue in identifying onset. Persistent delays established in the medical record can undermine a Petitioner's contentions regarding onset. *Pitts v. Sec'y Health & Human Servs.*, 18-1512V, 2020 WL 2959421 (Fed. Cl. Spec. Mstr. Apr. 29, 2020); *Eshraghi v. Sec'y of Health & Human Servs.*, 19-0039V, 2021 WL 2809590 (Fed. Cl. Spec. Mstr. June 4, 2021). Delay is not uncommon in SIRVA cases (since injured parties may reasonably misapprehend the scope of their injury, believing that is will prove transitory).[7] But once a claimant first reports what may be a vaccine

---

[6] *See Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013), *vacated on other grounds, Sanchez by & through Sanchez v. Sec'y of Health & Human Servs.*, No. 2019-1753, 2020 WL 1685554 (Fed. Cir. Apr. 7, 2020) (presumption that contemporaneously generated medical records are probative "is based on the linked propositions that (i) sick people visit medical professionals; (ii) sick people honestly report their health problems to those professionals; and *(iii) medical professionals record what they are told or observe when examining their patients in as accurate a manner as possible,* so that they are aware of enough relevant facts to make appropriate treatment decisions") (emphasis added); *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380 (Fed. Cir 2021) (medical records are based on the statements made by patients regarding the symptoms they are experiencing, and such records may serve as corroborating evidence for evaluating credibility).

[7] *See, e.g., Cooper v. Sec'y of Health & Human Servs.*, 16-1387V, 2018 WL 1835179 (Fed. Cl. Spec. Mstr. Jan. 18, 2018); *Marino v. Sec'y of Health & Human Servs*., 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018).

injury, the record should reflect greater attention to its treatment. Here, the repeated gaps make it harder to overlook the delay.

Finally, Petitioner's treatment history is inconsistent with his allegations regarding the severity of his pain.[8] As a general matter, "[i]t is reasonable to expect that the average Program claimant might seek medical treatment sooner if in fact the person was experiencing sudden post-vaccination pain." *Pitts*, 2020 WL 2959421, at *5. Given the disabling pain Petitioner describes, it would be reasonable to expect that he would have sought treatment earlier, or at a minimum, requested an urgent appointment at his December 2018 visit with Dr. Bandari. Instead, Petitioner waited another month for a follow-up appointment, delaying treatment for his shoulder for a total of four months. Indeed, Petitioner acknowledged in his affidavit that he decided to delay treatment until a previously scheduled appointment with Dr. Bandari, three months after vaccination, even though he was experiencing pain that he described as "unusual" compared with his experience receiving prior flu vaccines, that occurred "immediately" after vaccination, and that "persisted and never improved" during those three months. Ex 2 at 3; Ex 7 at 2. In some cases, this would merely constitute a limitation on damages to be awarded (specifically pain and suffering) – but here it further undermines the contention that the shoulder pain was in fact as sudden as alleged.

I acknowledge that the standard applied to SIRVA claims on the onset issue is fairly liberal. Even in the absence of direct proof, that standard will often permit a determination that onset began within the 48-hour timeframe set by the Table, based on records prepared a few months after vaccination, and/or corroborated by sworn witness statements intended to amplify otherwise-vague records. There are many situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *DeGeorge v. Sec'y of Health & Human Servs.*, 18-1815V, 2021 WL 2433250, at *6 (Fed. Cl. Spec. Mstr. May 13, 2021); *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006); *Lowrie*, 2005 WL 6117475, at *19. But not every SIRVA claim can be so preponderantly established, and certainly not where the sequential and contemporaneous record does not lend overall support to the Petitioner's allegations.

Therefore, after considering the record as a whole, I find there is not preponderant evidence to establish that Petitioner suffered the onset of symptoms within 48 hours of his flu vaccination as required by the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(I)(C).

However, I also note that the other Table indicia of a valid SIRVA claim *do* seem to exist – meaning that this is likely a viable non-Table claim even if Table onset cannot

---

[8] Described in his affidavit as "severe" and "sharp and shooting." Ex 2 at 2-3.

be proven. To that end, I urge the parties to make one final brief attempt at settlement – as I would anticipate that even after transfer, Petitioner's claim will likely be seen favorably by the special master who receives it.

### V.      Scheduling Order

Petitioner has not preponderantly established that onset of his pain occurred within 48 hours of vaccination. Accordingly, he cannot satisfy the requirements for a SIRVA Table claim, although the claim may be successful if the causation-in-fact standards for entitlement can be bet. **The parties shall file a final settlement status report on or before <u>Monday, September 13, 2021</u>**. The matter shall be transferred thereafter if the parties do not report significant progress in reaching an agreement at that time.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master